## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:22-CV-62333-WILLIAMS/AUGUSTIN-BIRCH

**MT. HAWLEY INSURANCE COMPANY,**

     **Plaintiff,**

**v.**

**PLYMOUTH PLAZA, LLC,**

     **Defendant.**

_____/

### REPORT AND RECOMMENDATION ON
### DEFENDANT'S RENEWED MOTION TO DISMISS

The Honorable Kathleen M. Williams, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for a report and recommendation on Defendant Plymouth Plaza, LLC's Renewed Motion to Dismiss.  DE 42; DE 43.  The Renewed Motion to Dismiss is fully briefed, Plaintiff Mt. Hawley Insurance Company having filed a Response [DE 54] and Defendant having filed a Reply [DE 61].  The Court held a hearing on the Motion on August 22, 2023.  The Court has carefully considered the parties' briefing, the arguments that counsel made during the hearing, and the record and is otherwise fully advised in the premises.  For the reasons set forth below, the Court recommends that the Renewed Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

### I.  BACKGROUND

Plaintiff issued a commercial general liability insurance policy to Defendant for the period of December 17, 2021 to December 17, 2022, that covered a commercial office building and parking garage Defendant owned in Clearwater, Florida.  *See* DE 38-4.  Mitchel Klock was

performing work on a stairwell in the parking garage on December 20, 2021, when the stairwell collapsed, killing him.  Klock's estate sued Defendant in Florida state court, raising claims of negligence, strict liability, and intentional tort ("the *Klock* action").

On March 23, 2022, Plaintiff sent Defendant a reservation of rights letter in which Plaintiff agreed to defend Defendant in the *Klock* action while reserving its right to disclaim insurance coverage based on Defendant's purported misrepresentations relating to the parking garage's structural condition.  *See* DE 38-6.  Among other things, the reservation of rights letter stated:

> While assigned counsel will be defending the entire lawsuit, Mt. Hawley reserves the right to later deny coverage for any uncovered claims.  This not only includes the right to deny indemnity but also to withdraw from the defense of the action, upon written notification to you, if at any time it becomes apparent that none of the claims are covered by the policy.  To the extent permitted by law, Mt. Hawley expressly reserves the right to seek reimbursement from you for any indemnity or expense paid, including defense costs, incurred in connection with any uncovered or excluded claims if it is determined that we had no obligation to pay those amounts.  Where applicable, this also includes the right to partial reimbursement for indemnity or expense paid which can be specifically allocated to individual claims within a lawsuit that are ultimately determined to be uncovered or excluded.

*Id.* at 11.

On May 20, 2022, Klock's estate sent Defendant a letter demanding $1 million, the per-occurrence limit under the insurance policy.  *See* DE 38-7.  This demand was open until June 9. *Id.* at 9.  Plaintiff subsequently agreed to settle the *Klock* action for $1 million, and the action settled for that amount.

In the instant lawsuit, Plaintiff seeks a declaration that it did not owe a duty to defend or indemnify Defendant in connection with the parking garage collapse and seeks to recoup from Defendant the $1 million settlement payment and the costs to defend the *Klock* action.  This case originally was assigned to the Honorable Rodolfo A. Ruiz, II, United States District Judge, who held a hearing on Defendant's first Motion to Dismiss and thereafter issued the paperless Order

that appears at docket entry 32.  *See* DE 36.  Judge Williams was assigned the case following Judge

Ruiz's recusal, and Plaintiff then filed the Corrected Second Amended Complaint.[1]

Plaintiff raises five Counts in the Corrected Second Amended Complaint.  DE 38.  In

Count I, Plaintiff seeks a declaratory judgment that it did not and does not owe a duty to defend or

indemnify Defendant in connection with the parking garage collapse.  In Count II, Plaintiff seeks

to recoup from Defendant the costs to defend the *Klock* action.  In the remaining Counts, Plaintiff

seeks to recoup from Defendant the settlement payment in the *Klock* action under a purported

agreement between the parties permitting Plaintiff to do so (Count III), through equitable

subrogation (Count IV), and through unjust enrichment (Count V).

Particularly relevant to the Renewed Motion to Dismiss are Plaintiff's allegations

concerning its decision to settle the *Klock* action and how the settlement was accomplished.

Plaintiff alleges that Defendant "repeatedly urged" Plaintiff to tender the per-occurrence limit of

$1 million to settle that action and "demanded" that Plaintiff accept Klock's estate's time-sensitive

$1 million settlement demand.  *Id.* ¶¶ 88, 127, 133.  Plaintiff agreed to settle the *Klock* action "to

protect itself and its insured, to prevent any potential excess liability, to resolve the underlying

litigation, and to make sure the underlying plaintiffs were compensated."  *Id.* ¶ 130.  After Plaintiff

accepted Klock's estate's demand, Defendant "participated in drafting a release," including

requesting that certain provisions be included in the release.  *Id.* ¶¶ 90-91, 136-37.  Plaintiff and

Defendant "partnered . . . throughout the settlement process," and Plaintiff kept Defendant

"informed throughout the entire settlement process."  *Id.* ¶¶ 92-93, 138.  Defendant "ratified the

---

[1] Although the transfer of a case from one district judge to another should not be treated as an opportunity to relitigate all of the first judge's rulings, the second judge may reconsider the first judge's rulings when final judgment has not been entered. *Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1465 n.9 (11th Cir. 1998).  The parties dispute whether Judge Ruiz made rulings during his motion hearing or in his paperless Order.  Even if the Court accepts that Judge Ruiz made rulings, Judge Williams may reconsider those rulings upon her review of this case. Thus, while this Court reviewed the transcript of Judge Ruiz's motion hearing and his paperless Order, the Court conducted its own, *de novo* evaluation of the parties' arguments and the relevant legal authority.

actions taken by [Plaintiff] to protect" Defendant, "did not object to the terms of [Plaintiff's] defense or reservation of rights," and "did not reject [Plaintiff's] defense." *Id.* ¶¶ 93-95, 118, 124, 135, 138.   Defendant "was aware at all times that [Plaintiff] would seek recoupment of its indemnity payment" made to settle the *Klock* action.  *Id.* ¶ 96.   Under these circumstances, and "[b]y virtue of the reservation-of-rights letter and [Defendant's] failure to object to it, [Plaintiff] secured a non-waiver agreement from its insured or the functional equivalent thereof." *Id.* ¶¶ 126, 131-32, 134.   Defendant now seeks dismissal of all claims in the Corrected Second Amended Complaint.

## II.  LEGAL STANDARDS

A court may grant a motion to dismiss a pleading if the pleading fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).   A court ruling on a Rule 12(b)(6) motion to dismiss accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff.  *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017).   The court should grant the motion to dismiss only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Dismissal is also "proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).   A court ruling on a motion to dismiss need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019).

### III.  ANALYSIS

#### A.  Choice of Law

The parties first dispute whether Florida or New York law governs Plaintiff's claims, with Plaintiff advocating for the application of New York law and Defendant advocating for the application of Florida law.  The parties' arguments center on the Service of Suit and Conditions Endorsement page of the insurance policy.  *See* DE 38-4 at 59.  That page states that the Endorsement "changes the policy" and includes the following paragraphs:

**Conditions**

1.  This Policy is amended to add the following Conditions:

    **AA. Jurisdiction and Venue.**  It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the "Insured" shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any "Insured" against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

    **BB. Choice of Law.**  All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

*Id.*

Plaintiff asserts that Paragraph BB adds a condition to the whole insurance policy and that any legal action that includes a question relating to the validity, interpretation, performance, or enforcement of any part of the policy is determined under New York law.  Defendant stresses that Paragraph BB is part of the Service of Suit and Conditions Endorsement and maintains that the Paragraph applies only in a legal action brought under Paragraph AA, that is, an action an insured brings to compel Plaintiff to pay a claim.  In Defendant's view, because it (the insured) has not brought this case to compel Plaintiff to pay a claim, Paragraph BB does not apply, and Florida law instead governs Plaintiff's claims.  No party has argued that the law of any state other than New York or Florida might govern in this case, and the parties therefore have forfeited any such

argument.  *See Robinson v. Sauls*, 46 F.4th 1332, 1341 n.6 (11th Cir. 2022) (explaining that a party abandons an argument by failing to make and cite authority supporting it).

Plaintiff filed this case under federal diversity jurisdiction.  In a case brought under diversity jurisdiction, the forum state's choice-of-law rules determine which state's substantive law applies.  *Am. Fam. Life Assurance Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).  Florida law enforces choice-of-law provisions in contracts unless strong public policy considerations counsel otherwise.  *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 223 F.3d 1275, 1280 (11th Cir. 2000).  No party has made a public-policy argument in this case.  Thus, if Paragraph BB applies to this case, it should be enforced, and New York law should govern Plaintiff's claims.

Cases have held that service of suit clauses that include requirements only for actions by the insured against the insurer apply only in such actions and not in actions by the insurer against the insured.  *E.g., Int'l Ins. Co. v. McDermott Inc.*, 956 F.2d 93, 95-96 (5th Cir. 1992) ("Indeed, the Service of Suit clause speaks only to actions brought by the insured.  Thus, when the action is first instituted by the insurer, the Service of Suit clause simply has no application."); *James River Ins. Co. v. Fortress Sys., LLC*, No. 11-60558-CIV, 2012 WL 760773, at *3 (S.D. Fla. Mar. 8, 2012) ("As an initial matter, the Service of Suit provision does not apply because James River, the insurer, filed this lawsuit against its insured.  By its plain language, a Service of Suit clause such as the one at issue in this case only applies when an insured files suit against the insurer, not vice versa.").

Here, Paragraph AA of the Service of Suit and Conditions Endorsement speaks only of actions by an insured against Plaintiff.  In fact, outside of Paragraph BB, all of the other requirements in the Service of Suit and Conditions Endorsement also relate only to actions by an

insured against Plaintiff, providing a limitations period and service of process instructions for such actions.  *See* DE 38-4 at 59.  Paragraph BB applies to "[a]ll matters arising hereunder."  It is reasonable to read that language as referring to matters arising under the Service of Suit and Conditions Endorsement, which is directed to actions by an insured against Plaintiff.  Furthering such an interpretation, it makes sense that Paragraph BB would choose New York law to apply in actions under Paragraph AA, which must be filed in New York state court.

On the other hand, the Service of Suit and Conditions Endorsement states that it changes and adds conditions to the insurance policy.  One could read the word "hereunder," which appears in both Paragraph AA and BB, as referring to the entire policy, meaning that Paragraph BB applies to all matters wherever filed that relate to the validity, interpretation, performance, and enforcement of any part of the policy.

Under both Florida and New York law, a contract is ambiguous when it is reasonably susceptible to different interpretations.  *Cypress Prop., LLC v. JP Morgan Chase Bank N.A.*, No. 21-11989, 2022 WL 950941, at *3 (11th Cir. Mar. 30, 2022) (citing Florida caselaw for the proposition that "[a] contract is ambiguous when it is reasonably or fairly susceptible to different constructions" (quotation marks omitted)); *Mickell v. Bell / Pete Rozelle NFL Players Ret. Plan*, 832 F. App'x 586, 592 (11th Cir. 2020) (citing New York caselaw for the proposition that "[a] contract is ambiguous . . . where its terms are subject to more than one reasonable interpretation" (quotation marks omitted)).  Further, under both Florida and New York law, an ambiguity in a contract should be construed against the insurer and in favor of the insured.  *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1190-91 & n.19 (11th Cir. 2009) (citing Florida caselaw for the existence of a "settled rule that ambiguous provisions in an insurance policy are construed against the insurer"); *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729

(2d Cir. 2012) (citing New York caselaw for the proposition that ambiguous language in a contract is interpreted in the insured's favor).

Plaintiff cites four cases as standing for the proposition that courts find choice-of-law provisions such as Paragraph BB unambiguous and enforceable. *See* DE 54 at 15 (citing *Smith v. Mt. Hawley Ins. Co.*, No. 8:22-cv-1386-CEH-TGW, 2022 WL 16856418 (M.D. Fla. Nov. 10, 2022); *Storm Damage Sols., LLC v. Mt. Hawley Ins. Co.*, No. 3:21cv1943-MCR-HTC, 2022 WL 2173075 (N.D. Fla. May 9, 2022); *Hous. Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.*, No. 2:15-cv-219-FtM-29MRM, 2016 WL 7130939 (M.D. Fla. July 19, 2016); and *Great Am. Fid. Ins. Co. v. JWR Constr. Servs., Inc.*, 882 F. Supp. 2d 1340 (S.D. Fla. 2012)). Here, though, there is not an issue as to whether the language of Paragraph BB itself is ambiguous or whether Paragraph BB is enforceable. Rather, the dispute is how broadly—to which types of actions— Paragraph BB applies, given its placement in the Service of Suit and Conditions Endorsement. Such a dispute was not addressed in any of the four orders Plaintiff cites.

The Court recommends that the better interpretation of the Service of Suit and Conditions Endorsement is that Paragraph BB applies to an action an insured brings under Paragraph AA to compel Plaintiff to pay a claim. Even if this is not a straightforward interpretation of the Service of Suit and Conditions Endorsement, the Endorsement is at least ambiguous as to how broadly Paragraph BB applies. Given an ambiguity, the insurance policy should be interpreted in Defendant's favor as the insured, meaning that Paragraph BB applies only to an action brought under Paragraph AA. As this case is not a Paragraph AA action, Florida law rather than New York law applies in this case. For the sake of completeness, however, the Court analyzes the viability of Plaintiff's claims under both Florida and New York law.

## B.  The Viability of Plaintiff's Claims Under Florida Law

An insurer has a duty to defend its insured and a separate and distinct duty to indemnify the insured.  *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1148 (11th Cir. 2010). The insurer "is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *Id.* at 1149 (quotation marks omitted).  The insurer "may reserve its right to challenge coverage under the policy without breaching its duty to defend by providing a defense under a reservation of rights." *Id.*  A conditional defense provided with a reservation of rights "resolves the urgent question of who shall defend and postpones resolution of the contingent question of who shall pay any judgment." *Id.* (quotation marks omitted).

As explained above, Plaintiff defended Defendant in the *Klock* action under a reservation of rights and settled the action for the $1 million policy limit.  Plaintiff now seeks to recoup from Defendant that settlement payment and the costs to defend the *Klock* action.  Defendant maintains that three principles under Florida law bar Plaintiff from prevailing: the requirement of a non-waiver agreement, the confession of judgment rule, and the prohibition of an insurer subrogating against its insured.

### 1.  Non-Waiver Agreements

Florida courts have "recognized several options available to an insurance carrier which has a perceived valid defense to coverage against third-party claims made on its insureds." *Steadfast Ins. Co. v. Sheridan Child.'s Healthcare Servs., Inc.*, 34 F. Supp. 2d 1364, 1366 (S.D. Fla. 1998). The insurer may: (1) "investigate the claim under a reservation of rights and then withdraw its defense and deny coverage, if its investigation reflects a good faith basis for doing so"; (2) "institute a declaratory action to establish non-coverage while defending under a reservation of rights"; or (3) "settle the underlying cause of action thereby waiving a defense to coverage

which it otherwise might have asserted." *Id.* "Generally, an action by an insurer against its insured to recover payment made to a third-party to settle a claim against the insured is precluded." *Royal Surplus Lines Ins. Co. v. Coachmen Indus., Inc.*, No. 3:01CV301J-HTS, 2002 WL 32894915, at *13 (M.D. Fla. Sept. 17, 2002) (quotation marks omitted). "[O]ne who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back." *Id.* at 13-17 (quotation marks omitted) (denying summary judgment after concluding that there was an issue of material fact as to whether insureds concealed relevant facts from an insurer before the insurer paid a settlement in an underlying lawsuit and therefore could recoup the settlement payment from the insureds). Caselaw refers to an agreement between an insurer and insured that alters this general rule and permits the insurer to recoup a settlement payment from the insured as a non-waiver agreement. *E.g., Steadfast*, 34 F. Supp. 2d at 1366.

Plaintiff contends that Defendant behaved fraudulently by making misrepresentations about the parking garage's structural condition in the application for the insurance policy. Importantly, though, Plaintiff does not assert that it lacked knowledge of any relevant facts before it entered into the settlement in the *Klock* action. It is not being disputed that Plaintiff had all relevant information—about the parking garage's structural condition or otherwise—before it agreed to settle the *Klock* action. This is not a case like *Royal Surplus Lines* where Plaintiff may be able to recoup the settlement payment because it made the payment without full knowledge of the relevant facts.

Plaintiff makes several arguments why it nevertheless should be able to recoup the settlement payment from Defendant. First, Plaintiff contends that the requirement of a non-waiver agreement to permit an insurer to recoup a settlement payment from its insured is only a requirement under a Florida statute that does not apply here. Thus, according to Plaintiff, it may

maintain a suit to recoup its settlement payment despite an absence of a non-wavier agreement. The statute in question, Florida's Claims Administration Statute, does address non-waiver agreements, *see* Fla. Stat. § 627.426(2)(b)(2), and it is undisputed that this statute does not apply to Plaintiff.[2] However, Florida's "Claims Administration Statute essentially codifies case law." *Steadfast*, 34 F. Supp. 2d at 1366. Plaintiff has not shown why the Florida caselaw precluding an insurer from recouping an insurance payment from its insured would not apply, even though the statute itself does not. *See, e.g.*, *Royal Surplus Lines*, 2002 WL 32894915, at *14 (citing Florida caselaw concerning waiver and equitable estoppel for the principle that an insurer that makes an insurance payment with full knowledge of the relevant facts cannot recoup the payment from the insured). Plaintiff's assertion that it does not need a non-waiver agreement to recoup the settlement payment from Defendant is unavailing.

Plaintiff next argues that, even if it needs a non-waiver agreement to recoup from Defendant, the allegations in the Corrected Second Amended Complaint demonstrate that the parties had "the functional equivalent" of a non-waiver agreement. DE 54 at 25. Plaintiff primarily relies on the reservation of rights letter for the existence of a non-waiver agreement, emphasizing the following language from the letter and Defendant's failure to object to it: "To the extent permitted by law, [Plaintiff] expressly reserves the right to seek reimbursement from you for any indemnity or expense paid, including defense costs, incurred in connection with any uncovered or excluded claims if it is determined that we had no obligation to pay those amounts." DE 38-6 at 11. Plaintiff cites no authority supporting a proposition that language such as this, contained within

---

[2] Chapter 627 of the Florida Statutes does not apply to Plaintiff because Plaintiff is a surplus line insurer. *See* Fla. Stat. § 626.913(4) (stating that "the provisions of chapter 627 do not apply to surplus lines insurance"); DE 38-4 at 1 (first page of the insurance policy stating that it is "issued pursuant to the Florida Surplus Lines Law" (quotation marks omitted)). A surplus line insurer is an insurer that must meet various statutory requirements to offer insurance coverage in the State of Florida. *E.g.,* Fla. Stat. §§ 626.913(2), .915.

a reservation of rights letter, equates with a non-waiver agreement in that it creates or preserves a right of an insurer to agree to settle an action and then recoup the settlement payment from its insured.

Plaintiff cites *James River Insurance Co. v. Arlington Pebble Creek, LLC* for the proposition that the reservation of rights letter is an independent and enforceable agreement. Defendant does not contend that the reservation of rights letter is unenforceable under Florida law,[3] but rather contends that the letter does not permit Plaintiff to recoup the settlement payment and defense costs that Plaintiff seeks through this case. In *James River*, an insurer defended an insured in a lawsuit under two reservation of rights letters that stated that the insurer did not waive its right to "seek reimbursement of all attorney's fees and costs incurred to defend" the insured. *James River Ins. Co. v. Arlington Pebble Creek, LLC*, 188 F. Supp. 3d 1246, 1251-52 (N.D. Fla. 2016) (emphasis omitted). The insurer then filed an action seeking a declaration that it did not have a duty to defend under the terms of the insurance policy. *Id.* at 1249. After concluding that the insurer did not have a duty to defend, the court determined that the insurer could recover its defense costs from the insured because the insurer "effectively reserved its right to seek reimbursement when it offered to defend [the insured], and [the insured] accepted its defense." *Id.* at 1260-62. The court in *James River* did not indicate that the insurer first settled the underlying lawsuit and then endeavored to recoup its defense costs. Moreover, *James River* involved a dispute as to the ability to recoup only defense costs, not a settlement payment. While *James River* stands for a proposition that a reservation of rights letter is enforceable under Florida law, it does not support reading the reservation of rights letter at issue here to include a non-waiver agreement.

---

[3] As discussed below, Defendant does assert that the reservation of rights letter may be unenforceable under New York law.

Plaintiff further maintains that Defendant's participation in reaching a settlement in the *Klock* action supports the existence of a non-waiver agreement.  As already explained, Plaintiff pleads that Defendant urged and demanded that Plaintiff accept Klock's estate's time-sensitive settlement demand, participated in the settlement process, and was aware that Plaintiff would seek to recoup the settlement payment.  *E.g.,* DE 38 ¶¶ 88, 93, 96, 133, 138.  The Court must accept these factual allegations as true at this stage.  *See Jones*, 857 F.3d at 850 (stating that a court ruling on a Rule 12(b)(6) motion to dismiss accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff).  However, Plaintiff provides no authority supporting a proposition that an insured's actions such as those pled can create or equate with a non-waiver agreement.  Moreover, Plaintiff does not plead that Defendant agreed to reimburse Plaintiff for the settlement payment, agreed that Plaintiff could or had a right to seek to recoup the settlement payment, or understood the reservation of rights letter as including the possibility for Plaintiff to seek to recoup the settlement payment.  Plaintiff's allegations do not demonstrate that Defendant agreed or understood that Plaintiff could recoup the settlement payment and proceeded with the settlement in the face of that agreement or understanding.

Plaintiff contends that Defendant relies primarily on *Steadfast* to support a position that Plaintiff cannot recoup the settlement payment, and Plaintiff argues that the facts of *Steadfast* are distinguishable.  The facts of *Steadfast* are distinguishable in that, in *Steadfast*, the insurer settled a lawsuit without the insured's consent and over the insured's objections and then sought to recoup the settlement payment.  *Steadfast*, 34 F. Supp. 2d at 1365-66 (explaining that the issue presented to the court on summary judgment was "whether an insurance carrier which asserts a defense to coverage may unilaterally settle a suit over the objection if its insured, then seek reimbursement from its insured").  The court stated, "No case authority holds that an insurer may deny coverage

for a claim made against its insured, exclude the insured from participation in negotiations or litigation of the claim, settle over the objections of the insured, then sue the insured for reimbursement." *Id.* at 1366. The court ruled that, because the insurer "failed to obtain a non-waiver agreement allowing it to recover from its insured money paid to settle a third-party claim, it has no right to recover against its insured" and granted the insured partial summary judgment. *Id.* at 1367.

Unlike in *Steadfast*, the facts as pled and accepted as true at this stage of the litigation are that Defendant demanded that Plaintiff accept Klock's estate's settlement demand and participated in the settlement process. *E.g.,* DE 38 ¶¶ 93, 133. The facts and precise question presented in *Steadfast* are distinguishable and do not necessarily assist Defendant. However, Plaintiff has come forward with no authority that supports its position either. Plaintiff has no authority supporting reading the reservation of rights letter to include a non-waiver agreement. Plaintiff has no authority supporting the existence of a non-waiver agreement based on Defendant's participation in the settlement process. Plaintiff has not pled facts showing that Defendant agreed or understood that there was a non-waiver agreement. Based on the facts as pled and the available caselaw, the Court concludes that under Florida law Plaintiff cannot recoup from Defendant the settlement payment in the *Klock* action.

## 2. The Confession of Judgment Rule

In addition to the lack of a non-waiver agreement, Defendant maintains that the confession of judgment rule bars Plaintiff from recouping the settlement payment. "In Florida, the payment of a settlement claim is the functional equivalent of a confession of judgment or a verdict in favor or the insured." *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 699 (11th Cir. 2005) (quotation marks omitted) (concluding that an insurer had admitted coverage for property damage in the

amount of its partial payment on the insureds' property insurance claim); *see also Port Consol., Inc. v. Mid-Continent Cas. Co.*, No. 09-20448-CIV, 2009 WL 10668948, at *3 (S.D. Fla. Oct. 15, 2009) (concluding that an insurer had admitted coverage for clean-up costs for gasoline discharges in the amount of its partial payments on the insured's insurance claim).

Plaintiff asserts that the confession of judgment rule is inapplicable because "it's just a fee-shifting doctrine." DE 54 at 30. The confession of judgment rule is sometimes invoked in the context of allocating attorney's fees and costs. *See, e.g.*, *Canal Ins. Co. v. SP Transp., Inc.*, 272 F. App'x 825, 827 (11th Cir. 2008) ("Under Florida law, [a] settlement is the equivalent of a confession of judgment and entitles the insured to attorney's fees because the insurer has declined to defend its position in the pending suit." (quotation marks omitted)). However, cases such as *Saewitz* and *Port Consolidated* cited above demonstrate that the confession of judgment rule does not apply solely in the context of a fees and costs allocation. The confession of judgment rule supports the Court's conclusion that Plaintiff cannot recoup from Defendant the settlement payment in the *Klock* action.

### 3. Subrogation

In addition to both the lack of a non-waiver agreement and the confession of judgment rule, Defendant maintains that subrogation principles bar Plaintiff from recouping the settlement payment. Subrogation is the "principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Subrogation*, Black's Law Dictionary (11th ed. 2019) (further defining subrogation as the "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor"). "In general, an insurance company is entitled to step into the shoes of an

insured it has compensated for a loss and sue any party whom the compensated insured could have sued for causing the loss." *Cont'l Ins. Co. v. Kennerson*, 661 So. 2d 325, 327 (Fla. 1st Dist. Ct. App. 1995). "[A]n insurance company cannot maintain a subrogation action against its own insured." *Id.* (quotation marks omitted); *see also Steadfast*, 34 F. Supp. 2d at 1366 ("Florida does follow the majority rule that an insurance carrier has no right of subrogation against its own insureds.").

Plaintiff contends that this rule preventing an insurer from subrogating against its insured is inapplicable because Plaintiff "is not asserting any subrogation claims against anyone," "isn't stepping into anyone's shoes," and is instead making claims that "are in the nature of restitution, not subrogation." DE 54 at 29. But Plaintiff as the insurer is attempting to recoup an insurance payment from the party it contends is at fault for a loss, which precisely fits the definition of subrogation. Plaintiff cannot subrogate against Defendant. This rule supports the Court's conclusion that Plaintiff cannot recoup from Defendant the settlement payment in the *Klock* action.

### 4. Defense Costs

Even if Plaintiff cannot recoup the settlement payment from Defendant, there remains the issue of whether Plaintiff may recoup from Defendant the costs to defend the *Klock* action. This is a distinct issue because the typical purpose of a reservation of rights letter is for an insurer to defend its insured while reserving the right to withdraw its defense and recoup the defense costs. In this case, though, Plaintiff did not begin to defend and then withdraw and seek recoupment, begin to defend and then obtain a court ruling that it had no duty to defend and seek recoupment, or begin to defend and then lose at trial and seek recoupment. Plaintiff instead defended the *Klock* action to its resolution, conceded to the resolution reached by settling, and now seeks recoupment.

The parties cite no caselaw specifying whether an insurer is entitled to recoup its defense costs from its insured in such a scenario.  However, *Canal Insurance Co. v. SP Transport, Inc.* is instructive.  In that case, an insurer defended its insured in a tort action under a reservation of rights but also filed a federal lawsuit against the insured seeking a declaratory judgment that there was no duty to defend or indemnify.  *Canal*, 272 F. App'x at 826.  The insurer later settled the tort action on the insured's behalf, and the district court dismissed the declaratory judgment lawsuit on the ground that the settlement rendered the lawsuit moot.  *Id.*  The insured then moved for attorney's fees for litigating the declaratory judgment lawsuit, and the Eleventh Circuit stated that the issue presented was "whether, under the confession of judgment rule of Florida law, an insured is entitled to attorney's fees when its insurer settles a third-party tort claim on behalf of the insured and, as a result, the district court dismisses as moot a related complaint for a declaratory judgment filed by the insurer."  *Id.* at 825.  The court concluded that, by settling the tort claim, the insurer "declined to defend its position that it was not required to defend or indemnify" its insured and that the insured could seek attorney's fees for litigating the declaratory judgment lawsuit.  *Id.* at 828.

This case is distinguishable from *Canal* in that, here, the insurer (not the insured) seeks defense costs for litigating the underlying tort action (not the declaratory judgment lawsuit).  Nevertheless, the conclusion in *Canal* that the insurer "declined to defend its position that it was not required to defend or indemnify" and confessed to judgment by settling the tort claim is instructive.  Here, Plaintiff settled the *Klock* action, thereby declining to defend its position that it was not required to provide a defense in that action.  Because Plaintiff ceded that it was required to provide a defense in the *Klock* action, Plaintiff cannot now recoup the costs of that defense from

Defendant.  The Court concludes that Plaintiff cannot recoup its defense costs from Defendant under Florida law.

## C.  The Viability of Plaintiff's Claims Under New York Law

Defendant maintains that Plaintiff cannot recoup the settlement payment and defense costs for the *Klock* action even if this case is resolved under New York law.  Defendant raises two issues under New York law to argue that Plaintiff cannot prevail the lack of authority permitting an insurer to claw back an insurance payment from an insured and the volunteer doctrine in conjunction with the prohibition of an insurer subrogating against its insured.

### 1.  Reservation of Rights Letters and the Ability to Claw Back

As an initial matter, the parties disagree on whether New York law enforces a reservation of rights letter that reserves rights for the insurer, such as the right to recoup defense costs, when those rights were not communicated in the insurance policy itself.  There is conflicting caselaw on this point.  *Compare Am. W. Home Ins. Co. v. Gjonaj Realty & Mgmt. Co.*, 192 A.D. 3d 28, 40 (N.Y. App. Div. 2020) (stating that "awarding an insurer its defense costs when the insurer issues a reservation of rights letter for the same despite the lack of any language in the policy at issue permitting the insurer to recover the costs of defending claims that are later determined not covered by the policy flies in the face of basic contract principles and allows an insurer to impose a condition on its defense that was not bargained for"), *with Maxum Indem. Co. v. A One Testing Lab'ys, Inc.*, 150 F. Supp. 3d 278, 283-84 (S.D.N.Y. 2015) ("New York law permits insurers to provide their insureds with a defense subject to a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage.  Courts have consistently determined that insurers are entitled to reimbursement of defense costs upon a determination of

non-coverage so long as the reservation was communicated to the insured, who did not expressly refuse to consent to the reservation." (citation and quotation marks omitted)).

The Court need not resolve whether the reservation of rights letter at issue in this case is enforceable under New York law.  Even if the Court accepts that the reservation of rights letter is enforceable, Plaintiff cites no authority under New York law that supports reading the reservation of rights letter to permit Plaintiff to settle an action and then recoup the settlement payment from Defendant.  Plaintiff also cites no authority under New York law that supports construing Defendant's alleged actions—participating in the settlement process in the *Klock* action with an awareness that Plaintiff would seek to recoup the settlement payment—as creating a right for Plaintiff to settle the action and then recoup the settlement payment.  Based on the facts as pled and the available caselaw, the Court concludes that under New York law Plaintiff cannot recoup from Defendant the settlement payment in the *Klock* action.

### 2. The Volunteer Doctrine

Defendant contends that the volunteer doctrine also prevents Plaintiff from prevailing.  "An insurer which pays a loss for which it is not liable thereby becomes a mere volunteer, and is not entitled to subrogation, in the absence of an agreement therefor."  *Nat'l Union Fire Ins. Co. v. Ranger Ins. Co.*, 190 A.D. 2d 395, 396-97 (N.Y. App. Div. 1993) (quotation marks omitted) (concluding that an insurer that settled an action despite the absence of insurance coverage could not recoup the settlement payment from its insured because the insurer, not being obligated to make payment under the insurance policy, "became a volunteer with no right to recover the monies it paid on behalf of its insured").

Plaintiff argues that application of the volunteer doctrine "is not automatic" and that an insurer "is not a volunteer when it makes a good-faith payment under a reasonable belief that such

payment is necessary to protect itself." DE 54 at 19 (quotation marks omitted). Plaintiff cites *Americas Insurance Co. v. Stolt-Nielsen, Inc.* for that proposition. *See Americas Ins. Co. v. Stolt-Nielsen, Inc.*, No. 97 Civ. 8018(RCC), 2004 WL 2199497, at *6 (S.D.N.Y. Sept. 30, 2004). *Americas*, in turn, cites two cases to support the proposition. In the first case, the court concluded that an insurer "did not act as a mere volunteer in providing its insured with a defense and paying [a] judgment" because the insurer did so only after a second insurer "refused to participate in the defense and denied that its policy covered [an] accident." *Gen. Accident Ins. Co. v. U.S. Fid. & Guar. Ins. Co.*, 193 A.D. 2d 135, 137 (N.Y. App. Div. 1993) (concluding that the first insurer could recover a share of the judgment payment from the second insurer). Similarly, in the second case, the court concluded that an insurer could recover a share of settlement payments from a second insurer because "the majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer not entitled to recover." *Vigilant Ins. Co. v. Emps. Ins. of Wausau*, 626 F. Supp. 262, 269 (S.D.N.Y. 1986) (quotation marks omitted).

This case does not involve two insurers, so the circumstances under which the courts ruled in *General Accident* and *Vigilant* that the volunteer doctrine did not apply are not present. If it were the case that the volunteer doctrine did not apply in every instance where an insurer made payment to protect itself, the doctrine might never apply. It will always or almost always be the case that an insurer that settles a lawsuit does so in part to protect itself. Even where the insurer settles for the policy limit, the insurer protects itself from additional defense costs should the litigation continue forward. The Court finds unavailing Plaintiff's contention that the volunteer doctrine should not apply because it settled the *Klock* action to protect itself. In this instance,

where Plaintiff paid to settle that litigation while maintaining that it might not be liable to make payment, the volunteer doctrine should apply to preclude Plaintiff from recouping the payment from Defendant if there was no insurance coverage for the *Klock* action.

### 3. Subrogation

If, on the other hand, there was insurance coverage for the *Klock* action, then the principle of anti-subrogation precludes Plaintiff from recouping the settlement payment.   "The 'antisubrogation rule' is the general principle that an insurer may not recover from its own insured." *Americas*, 2004 WL 2199497, at *5.  The rule "applies only to recovery by an insurer against its own insured for a claim arising from the very risk for which the insured was covered, with the rationale that such an action would deprive the insured of the very security for which it had paid a premium." *Id.* (quotation marks omitted) (explaining that the anti-subrogation rule does not apply when the loss was outside the scope of the insurance policy).

Thus, whether the *Klock* action did not fall within the scope of the insurance policy or whether the action did fall within the scope of the policy, Plaintiff cannot recoup the settlement payment.  If the former, the volunteer doctrine precludes Plaintiff from recouping the payment.  If the latter, the anti-subrogation rule precludes Plaintiff from recouping the payment.

### 4. Defense Costs

The parties cite no caselaw under New York law specifying whether an insurer is entitled to recoup its defense costs for an underlying action from its insured when the insurer settled the underlying action.  But the rationale for denying Plaintiff the ability to recoup defense costs discussed above in analyzing Florida law remains valid.  By settling the *Klock* action, Plaintiff declined to defend its position that it was not required to provide a defense in that action.  Because

Plaintiff ceded that it was required to provide a defense, Plaintiff cannot now recoup the costs of that defense from Defendant.

## VI.  CONCLUSION

Whether Plaintiff's claims are analyzed under Florida or New York law, Plaintiff cannot recoup from Defendant the settlement payment or the costs to defend in the *Klock* action.  Thus, the Court recommends that Counts II, III, IV, and V of the Corrected Second Amended Complaint be dismissed.

In Count I, Plaintiff seeks a declaratory judgment that it did not and does not owe a duty to defend or indemnify Defendant in connection with the parking garage collapse.  The parties did not brief the issue of Plaintiff's duty to defend or indemnify, instead focusing on Plaintiff's ability to recoup from Defendant.  Moreover, Count I is not limited to seeking a declaratory judgment as to duty to defend or indemnify in connection with the *Klock* action.  Rather, Plaintiff seeks a declaratory judgment as to *any* claims arising from the parking garage collapse.  During the August 22 hearing, the parties were not in agreement as to whether there are or could be any other claims arising from the collapse.  Therefore, the Court recommends that Count I of the Corrected Second Amended Complaint not be dismissed at this juncture.

For the foregoing reasons, the Court **RECOMMENDS** that the Renewed Motion to Dismiss [DE 42] be **GRANTED IN PART AND DENIED IN PART**, that Count I not be dismissed, and that Counts II, III, IV, and V be dismissed.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on

unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 29th day of August, 2023.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE